HIERONYMUS et al. v. NEW YORK NAT. BUILDING & LOAN ASS'N.

(Circuit Court, S. D. Alabama. February 6, 1899.)

No. 206.

1. USURY—WHAT LAW GOVERNS—PLACE OF PAYMENT.
    Parties to a loan by a corporation of one state to a resident of another, to be paid to the borrower in his own state, and secured by mortgage on real estate there situated, will be presumed to have contracted with reference to the laws of the state of the lender, where repayment of the principal of the debt is to be there made; and the question whether the contract is usurious is to be determined by the law of that state, especially if, under such law, it is valid, while under the law of the state of the borrower it is invalid.

2. PLEADING—ALLEGATION OF CONCLUSION.
    An allegation in a pleading that a provision in a contract making a loan payable in the state of the lender instead of that of the borrower was a mere device to evade the usury laws of the latter state must state the facts from which such conclusion may be deduced.

3. BUILDING AND LOAN ASSOCIATIONS—USURY—NEW YORK STATUTES.
    Under the statute of New York governing building and loan associations, the taking of premiums for loans made by such associations does not render the loans usurious.

In Equity. On demurrers to bill and amended bill.

Gregory L. & H. T. Smith, for complainant.
Pillans, Hanaw & Pillans and R. W. Stoutz, for defendant.

TOULMIN, District Judge. This is a bill in equity, praying, among other things, that the court will cause an account to be taken of the transaction between the complainants and the defendant set out in the bill; that the contract described therein may be declared to be usurious; and that the mortgage mentioned in the bill may be declared to be fully satisfied and paid, and canceled upon the record. The contract set out in the bill is a bond and mortgage executed by the complainants to the defendant to secure the payment of a sum of money loaned by the latter to the former on certain terms and conditions therein recited. The contract expressly provides that the payment of the principal sum shall be made at the home office of the defendant in New York City. No express provision is made for the place for the payment of the interest. It is admitted in the bill that the contract provides for the payment of the debt in New York, but it is alleged that this provision in the bond was a mere guise, which was intended to enable the defendant to avoid the usury laws of the state of Alabama, and that it was understood and agreed that all the payments to be made by the complainants should be made in Mobile, Ala., to the defendant, through one Willis G. Clark, who was the local collector of the defendant at that place. It is also alleged in the bill that certain monthly payments of premiums, dues, etc., provided for in the contract, should be made either to said Clark, local collector, or at the home office. In view of the express provisions of the contract, and of all the circumstances and conditions of the transaction as shown by the bill, I think there is no doubt that the agreement for payments to be made to Clark, the local collector, was for convenience sake only, and did not make the contract an Alabama contract. The real issue presented for our consideration is whether the contract is usurious. If the contract is usurious, the complainants' bill should be sustained. If the contract is not usurious, the demurrers to the bill—many of them, at least—should be sustained, and the bill dismissed.

In deciding whether the contract is usurious or not we must determine by the law of which state—Alabama or New York—the performance of the contract is to be governed. All the terms of a contract must be examined, in connection with the attendant circumstances, to ascertain what law was in the view of the parties when the contract was executed. "In every forum a contract is governed by the law with a view to which it was made." It is well-established law that the performance of contracts is to be governed by the law of the place of performance; and, if the interest allowed by the law of the place of performance is higher than that permitted at the place of the contract, the parties may stipulate for the higher interest without incurring the penalties of usury. Miller v. Tiffany, 1 Wall. 310, 17 L. Ed. 540; Coghlan v. Railroad Co., 142 U. S. 109,

12 Sup. Ct. 150, 35 L. Ed. 951; Brower v. Insurance Co. (C. C.) 86 Fed. 748; Andrews v. Pond, 13 Pet. 65, 10 L. Ed. 61. "The law of the state where a contract is made generally controls in respect to its validity; but, if it appears that it was made to be performed in some other state, the law of that state governs." Sturdevant v. Bank, 9 C. C. A. 256, 60 Fed. 730; Liverpool & G. W. Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 9 Sup. Ct. 469, 32 L. Ed. 788; Wick v. Dawson (W. Va.) 24 S. E. 587. Parties to a loan by a foreign corporation to a resident of another state, to be paid to the borrower in his own state, and to be secured by a trust deed upon property in his state, will be presumed to have contracted with reference to the laws of the state of the lender, where repayment of the loan is to be made there. Nickels v. Association (Va.) 25 S. E. 8; Association v. Logan, 14 C. C. A. 133, 66 Fed. 827; Coghlan v. Railroad Co., supra. Under the well-established rule, as hereinbefore stated, when a party in Alabama borrows money from a New York corporation, promising to pay the principal sum at the home office in New York City, the question whether the contract is usurious must be determined by the New York law, though the loan is secured by a mortgage on Alabama lands. The rule referred to is not affected by the fact that the loan is secured by a mortgage of realty in a state other than that in which the debt, to which the mortgage is only an incident, is payable. The laws of the state of New York permit the contract complained of in this case. The contract, construed in reference to these laws, is regular and lawful. The debt is, by the contract, expressly made payable in New York City. The allegation in the bill that this provision of the contract was a mere guise, which was intended to enable the defendant to avoid the usury laws of the state of Alabama, if intended as an allegation that the place of payment named was a false one, is a mere conclusion of the pleader, and must be disregarded except so far as the facts alleged sustain it. The facts from which the conclusion is deducible must be averred. 9 Enc. Pl. & Prac. 686, and numerous authorities cited in the notes. The facts alleged in the bill do not show, or, in my judgment, tend to show, that the place fixed for the payment of the debt was for the purpose of avoiding the penalty of a usurious contract in Alabama. The parties to a loan by a foreign corporation will be presumed to have contracted with reference to the laws of the state of the lender, where repayment of the loan is to be made there. And it is well settled by the decisions of the United States supreme court that a contract is governed by the law with a view to which it is made; and it is to be presumed, in the absence of any express declaration or controlling circumstances to the contrary, that the parties had in contemplation a law according to which their contract would be upheld, rather than one by which it would be defeated. Nickels v. Association, supra; Pritchard v. Norton, 106 U. S. 124, 1 Sup. Ct. 102, 27 L. Ed. 104; Coghlan v. Railroad Co., supra; Caesar v. Capell (C. C.) 83 Fed. 403. It seems clear to me that the parties to the contract in question had in contemplation the law of the state of New York, which upholds the contract. "If there is one thing which, more than another, public

policy requires, it is that men of full age and competent understanding shall have the utmost power of contracting; and their contracts, when entered into freely and voluntarily, shall be held sacred, and be enforced by courts of justice." Registering Co. v. Sampson, L. R. 19 Eq. 462. In a case much like this one in principle, the learned judge who rendered the opinion, in referring to the defendants, aptly said:

"They made the contract. It is too late to complain that it was a bad one. Reckless borrowing and contraction of debts is the bane of this country; and too often, after parties have made bad contracts, they come to the courts asking their help, even though they must violate the law in granting it. It has been said that the speediest way to procure the repeal of a bad law is by its strict enforcement. Perhaps the way to discourage the borrowing mania of the people is to strictly apply the law to all contracts. At any rate, the courts cannot violate the law to lighten the burden of improvident contracts." Trust Co. v. Dygert (C. C.) 89 Fed. 123.

These remarks may be appropriately applied to the case at bar and others of like character. My conclusion, therefore, is that the demurrers to the bill are well made, and should be sustained, and it is so ordered.

(March 17, 1900.)

In this case there are 80 grounds of demurrer assigned to the bill as amended. I think, as a whole, they are unnecessarily voluminous and prolix. Some of them, it seems to me, present points not raised by the bill, and many of them are repetitions of the same point. As I understand the amendments to the bill, there are practically but two material questions raised by them: First, the question whether there was a binding contract growing out of the alleged representations as to the time of the maturity of the stock of the defendant company,—whether the time of maturity, alleged to have been fixed at seven years, could be arbitrarily fixed at that period by the company, so as to relieve the complainants, after that period, from the further payment of the charges provided for in the contract; and, second, whether the premium charged was unauthorized by the laws of New York, and the contract, therefore, usurious under those laws. This court held on the hearing of the demurrers to the bill as originally filed that the contract was governed by the laws of New York, and that under those laws it was not usurious. I see now no reason to change that ruling. The New York statute governing building and loan associations does not provide for the manner or mode of making loans to members of such associations, or of fixing the premiums to be paid by them, but it does provide that any premiums for loans made to such members shall not be deemed a violation of the provisions of any statute against usury. Andruss v. Association, 36 C. C. A. 336, 94 Fed. 575; Association v. Read, 93 N. Y. 474. If the statute had provided for the manner or mode of fixing the premiums to be paid, and such mode had not been followed, then the premium would have been unlawful. Douglass v. Kavanaugh, 33 C. C. A. 107, 90 Fed. 375. By the terms of the contract providing for the payment of dues, premium, and interest, as the same is shown in the bill, the complainants are not entitled to cancellation of the mortgage after paying such charges for a period of seven

years, it not appearing that complainants' shares of stock are fully paid. King v. Union (Ill. Sup.) 48 N. E. 677; 4 Am. & Eng. Dec. Eq. 9; O'Malley v. Association, 92 Hun, 572, 36 N. Y. Supp. 1016; People v. Preston, 140 N. Y. 549, 35 N. E. 979; Weirman v. Union, 67 Ill. App. 550. My opinion is that the demurrers on the proposition, contended for by the complainants, that the contract is a definite and binding contract to satisfy the debt in seven years, are well taken, and they are sustained; and also that the demurrers on the proposition that the premium is unlawful and usurious, are well taken, and they are sustained. The demurrers presenting the point that the contract is governed by the laws of the state of New York, and that under those laws it is not usurious, are sustained. All other demurrers are overruled.